Mike Arias (CSB #115385)
Mikael H. Stahle (CSB #182599)
**ARIAS SANGUINETTI STAHLE**
**& TORRIJOS LLP**
6701 Center Drive West, Suite 1400
Los Angeles, CA 90045
Telephone:   (310) 844-9696
Facsimile:   (310) 861-0168
mike@asstlawyers.com
mikael@asstlawyers.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

NICHOLAS RAZO, an individual, on behalf of himself and all others similarly situated; KATHLEEN KOEHN, an individual, on behalf of herself and all others similarly situated,

                    Plaintiffs,

          vs.

ASHLEY FURNITURE INDUSTRIES, INC., a Wisconsin corporation; ASHLEY HOMESTORES, LTD., a Wisconsin corporation; and DOES 1 through 100, inclusive,

                    Defendants.

Case No.    2:16-cv-2911

<u>**CLASS ACTION**</u>

**COMPLAINT**

1. **VIOLATION OF CONSUMERS LEGAL REMEDIES ACT (CIV. CODE §§ 1750, *ET SEQ.*)**

2. **VIOLATION OF THE UNFAIR COMPETITION LAW (BUS. & PROF. CODE §§ 17200, *ET SEQ.*)**

3. **VIOLATION OF THE FALSE ADVERTISING LAW (BUS. & PROF. CODE §§ 17200, *ET SEQ.*)**

4. **FRAUD BY CONCEALMENT**

5. **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (COM. CODE § 2314)**

6. **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (CIV. CODE §§ 1790, *ET SEQ.*)**

**DEMAND FOR JURY TRIAL**

**COMPLAINT**

*(left margin, vertical)* **ARIAS SANGUINETTI STAHLE & TORRIJOS LLP**

ARIAS SANGUINETTI STAHLE & TORRIJOS LLP

**JURISDICTION AND VENUE**

1.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2).

2.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (d).

**PLAINTIFFS**

3.      The Class that Plaintiffs seek to represent (the "Class") comprise the following persons:  *All persons who purchased furniture with DuraBlend®* *upholstery from Defendants in California on or after December 22, 2011.*

4.      The number of members of the Class is greater than 100.

5.      The matter in controversy in this action exceeds the sum or value of $5,000,000, exclusive of interest and costs.

6.      Plaintiff Nicholas Razo

        a.      Plaintiff Razo is a member of the Class identified in Paragraph 3.

        b.      Plaintiff Razo is a citizen of California.

        c.      On or about October 27, 2013, Plaintiff Razo purchased from Defendants, at a retail store doing business as "Casa Linda Furniture," located at 7510 Firestone Boulevard, Downey, California, a sofa and a loveseat, both having brown DuraBlend® upholstery, for approximately $2,000 (collectively, "Furniture I").  Plaintiff Razo purchased Furniture I believing its upholstery to be leather, as it appeared to be leather.  However, Defendants sold Furniture I to Plaintiff Razo without disclosing to him that Furniture I's upholstery was in fact not leather and without disclosing to him the percentage of leather scraps or fibers, if any, or the percentage of non-leather substances contained in it.  Nor did Defendants disclose to Plaintiff Razo that Furniture I was of such nature and quality that it would not hold up to normal wear and

**COMPLAINT**

**ARIAS SANGUINETTI STAHLE & TORRIJOS LLP**

tear and that it would begin to peel or disintegrate within a short period of time.

d.      Plaintiff Razo has continuously owned Furniture I since he bought it and has continuously kept it in his living room for him and his family's normal course of use.  In or about January of 2014, Plaintiff Razo discovered that the DuraBlend® upholstery on Furniture I was peeling, causing pieces and particles of the top "leather"-like layer to come off and exposing the underlying material, which was coarse in texture and off-white in color. The pictures attached hereto as **Exhibit A** show Furniture I in this state.  From then on, Plaintiff Razo kept Furniture I covered by blankets so as to avoid further peeling.

e.      In or about mid-2014, Plaintiff Razo complained to Defendants that Furniture I was peeling and asked that they rectify it.  When Plaintiff Razo contacted the store where he had bought Furniture I and explained what had happened and requested a refund, the salesman directed him to contact Defendants at the factory level.  When Plaintiff Razo did so, Defendants told him they would look into the problem and get back to him, which they never did despite his requests that they do so.

f.      To this day, Defendants have failed to provide any remedy for the monetary loss they caused Plaintiff Razo by selling him faulty furniture.

7.    Plaintiff Kathleen Koehn

a.      Plaintiff Koehn is a member of the Class identified in Paragraph 3.

b.      Plaintiff Koehn is a citizen of California.

c.      On or about April 27, 2013, Plaintiff Koehn purchased from Defendants, at a retail store doing business as "Design Center," located at 606 West Katella Avenue, Orange, California, a sectional sofa, having brown

Page 3

**COMPLAINT**

**ARIAS SANGUINETTI STAHLE & TORRIJOS LLP**

1    DuraBlend® upholstery, for approximately $650 ("Furniture II").   Plaintiff

2    Koehn purchased Furniture II believing its upholstery to be leather.   She

3    believed it to be leather because it appeared to be leather and because

4    Defendants represented that the upholstery was made of "bonded leather."

5    However, Defendants sold Furniture II to Plaintiff Koehn without disclosing to

6    her that Furniture II's upholstery was in fact not leather and without disclosing

7    to her the percentage of leather scraps or fibers, if any, or the percentage of

8    non-leather substances contained in it.   Nor did Defendants disclose to Plaintiff

9    Koehn that Furniture II was of such nature and quality that it would not hold

10   up to normal wear and tear and that it would begin to peel or disintegrate

11   within a short period of time.

12          d.    Plaintiff Koehn has continuously owned Furniture II since

13   she bought it and has continuously kept it in her living room for her and her

14   family's normal course of use.   In or about early 2014, Plaintiff Koehn

15   discovered that the DuraBlend® upholstery on Furniture II was peeling,

16   causing pieces and particles of the top "leather"-like layer to come off and

17   exposing the underlying material, which was coarse in texture and off-white in

18   color.  By or before the second anniversary of Plaintiff Koehn's having bought

19   Furniture II, the brown top layer had almost completely peeled off from much

20   of the seating surfaces, leaving several of the surfaces to mostly comprise the

21   off-white coarse underlying material and little of the "leather"-like top layer

22   with which Furniture II was sold to Plaintiff Koehn.   The pictures attached

23   hereto as **Exhibit B** show Furniture II in this state.

24          e.    In or about mid-2014, Plaintiff Koehn complained to

25   Defendants that Furniture II was peeling and asked that they rectify it.

26   However, Defendants refused to provide a refund, but offered to reupholster

27   the peeling areas if Plaintiff Koehn paid for it.   When she then contacted the

28   store where she had bought Furniture II and explained what had happened, the

Page 4

**COMPLAINT**

salesman declined to provide a refund and told her there was nothing he could do, as this type of furniture was not "designed to last" as much as two years.

f. To this day, Defendants have failed to provide any remedy for the monetary loss they caused Plaintiff Koehn by selling her faulty furniture.

## **CLASS ALLEGATIONS**

8. The persons who comprise the Class are so numerous that joinder with all such persons is impracticable and the disposition of their claims will benefit the parties and the Court. The claims of Plaintiffs are typical of the claims of the Class. Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs do not have any interests that are antagonistic to the Class. Counsel for Plaintiffs are experienced, qualified, and generally able to conduct complex class action litigation.

9. This Court should permit this action to be maintained as a class action pursuant to CAL. CODE CIV. PROC. § 382 for the following reasons:

a. The questions of law and fact common to the Class predominate over any question affecting only individual members;

b. A class action is superior to any other available method for the fair and efficient adjudication of the claims of the members of the Class;

c. The members of the Class are so numerous that it is impractical to bring all members of the Class before the Court;

d. Plaintiffs and the other members of the Class will not be able to obtain effective and economic legal redress unless the action is maintained as a class action;

e. There is a community of interest in obtaining appropriate legal and equitable relief for the common law and statutory violations and other improprieties alleged herein, as well as in obtaining adequate compensation for the damages and injuries for which Defendants are

**COMPLAINT**

ARIAS SANGUINETTI STAHLE & TORRIJOS LLP

responsible in an amount sufficient to adequately compensate the members of the Class for the injuries sustained;

       f.    Without class certification, the prosecution of separate actions by individual members of the Class would create a substantial risk of the following:

          i.    Inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Defendants, and/or

          ii.    Adjudications with respect to the individual members that would, as a practical matter, be dispositive of the interests of other members not parties to the adjudications, or would substantially impair or impede their ability to protect their interests, including but not limited to the potential for exhausting the funds available from those parties who are, or may be, responsible Defendants; and

       g.    Defendants have acted, or refused to act, on grounds that are generally applicable to the Class, thereby making final injunctive relief appropriate with respect to the Class as a whole.

## DEFENDANTS

      10.    Plaintiffs are informed and believe, and based on that information and belief allege, that Defendant Ashley Furniture Industries, Inc., ("Ashley Furniture") is, and at all relevant times herein mentioned was:

       a.    A duly organized Wisconsin corporation;

       b.    A citizen of Wisconsin; and

       c.    Duly qualified to conduct business, and conducting business, in the State of California, including the Central District of California.

      11.    Plaintiffs are informed and believe, and based on that information and belief allege, that Defendant Ashley HomeStores, Ltd., ("Ashley HomeStores") is, and at all relevant times herein mentioned was:

**COMPLAINT**

a.   A duly organized Wisconsin corporation;

b.   A citizen of Wisconsin; and

c.   Duly qualified to conduct business, and conducting business, in the State of California, including the Central District of California.

12.   The true names and capacities, whether individual, corporate, partnership, associate, or otherwise, of Defendants Does 1 through 100, inclusive ("Doe Defendants"), are unknown to Plaintiffs who therefore sue these Doe Defendants by such fictitious names pursuant to CAL. CODE CIV. PROC. § 474.  Plaintiffs will seek leave to amend this complaint to allege their true names and capacities when they are ascertained.

13.   Plaintiffs are informed and believe, and based on that information and belief allege, that each of the Defendants named in this complaint, including each of the Doe Defendants, is responsible in some manner for one or more of the events and happenings, and proximately caused the injuries and damages, hereinafter alleged.

14.   Plaintiffs are informed and believe, and based on that information and belief allege, that each of the Defendants named in this complaint, including each of the Doe Defendants (collectively, "Defendants"), is, and at all relevant times herein mentioned was, the agent, servant, and/or employee of each of the other Defendants, and that each Defendant was acting within the course and scope of his, her, or its authority as the agent, servant, and/or employee of each of the other Defendants.  Consequently, each Defendant is jointly and severally liable to Plaintiffs and the other members of the Class for the losses sustained as a proximate result of their conduct.

## BACKGROUND ALLEGATIONS

15.   Defendants Ashley Furniture and Ashley HomeStores (collectively "Ashley") have at all relevant times herein mentioned been engaged in the manufacture and sale of residential furniture.  Established in 1945, Ashley

Page 7

**COMPLAINT**

holds itself out as the largest furniture manufacturer and retailer in the world, with over 500 retail outlets in 123 countries, including the United States and Canada.

16.    In or about April of 2008, Ashley began incorporating an upholstery product into some of its furniture, including sofas, loveseats, sectionals, and ottomans, which it marketed as "blended leather upholstery" under the trade name DuraBlend®.  According to the online encyclopedia WikiPedia.com, "blended leather" is synonymous with "bonded leather," a man-made material that incorporates leather scraps and fiber and mimics the appearance of leather:

> Bonded leather … is a term used for a man-made upholstery material made as a layered structure of a fiber or paper backer, a pulp made from shredded leather, and a polyurethane coating which may be embossed with a leather-like texture.  Bonded leather is made by shredding leather scraps and leather fiber, then mixing it with bonding materials. The mixture is next extruded onto a fiber cloth, or paper backing, and the surface is usually embossed with a leather-like texture or grain. Color and patterning, if any, are a surface treatment that does not penetrate like a dyeing process would. The natural leather fiber content of bonded leather varies. The manufacturing process is somewhat similar to the production of paper.
>
> Lower-quality materials may suffer flaking of the surface material in as little as a few years, while better varieties are considered very durable and retain their pattern and color even during commercial use.  Because the composition of bonded leathers and related products varies considerably (and sometimes is a trade secret), it may be difficult to predict how a given product will perform over the course of time. There is a wide range in the long-evity of bonded leathers and related products; some better-quality bonded leathers are claimed to be superior in durability over low-quality genuine leather.

///

**COMPLAINT**

ARIAS SANGUINETTI STAHLE & TORRIJOS LLP

ARIAS SANGUINETTI STAHLE & TORRIJOS LLP

The actual leather content of bonded leather varies depending on the manufacturer and the quality level they are selling. In the home furnishings industry there is much debate and controversy over the ethics of using the term "bonded leather" to describe an upholstery product, which is actually a reconstituted leather. Opinion in the leather industry says that calling a product "bonded leather" is "deceptive because it does not represent its true nature. It's a reconstituted hide, not an organically grown leather."

The US Federal Trade Commission recommends according to 16 C.F.R. Section 24: "For example: An industry product made of a composition material consisting of 60% shredded leather fibers may be described as: Bonded Leather Containing 60% Leather Fibers and 40% Non-leather Substances." The Federal Trade Commission has said that "The guidelines caution against misrepresentations about the leather content in products containing ground, reconstituted, or bonded leather, and state that such products, when they appear to be made of leather, should be accompanied by a disclosure as to the percentage of leather or other fiber content. The guidelines also state that these disclosures should be included in any product advertising that might otherwise mislead consumers as to the composition of the product."

(See https://en.wikipedia.org/wiki/Bonded_leather.  Footnotes omitted.)

17.   Rather than disclose the true nature and content of the DuraBlend® upholstery, Ashley knowingly, affirmatively, and actively concealed its true nature and content from Plaintiffs and the other members of the Class.  Instead, Ashley marketed the DuraBlend® upholstery as "blended leather," which appeared to be leather to a reasonable consumer, without providing disclosures of such conspicuousness and clarity as to be noted by a reasonable consumer casually inspecting the products, or casually reading or listening to Defendants' marketing materials, that the DuraBlend® upholstery was in fact not leather or of the percentage of leather scraps or fibers, if any, or the percentage of non-leather substances contained in it, as required by law.  As a result, Plaintiffs and the other members of the Class purchased furniture from Ashley

Page 9

**COMPLAINT**

1  with DuraBlend® upholstery, without knowing the true nature, content, or
2  quality of the upholstery, instead reasonably believing it to be leather and
3  reasonably believing it to be of such nature and quality as to hold up to normal
4  wear and tear and not begin to peel or disintegrate within a short period of
5  time.

6  ### TOLLING OF STATUTES OF LIMITATION

7  18.   Any and all applicable statutes of limitation have been tolled by
8  Defendants' knowing and active fraudulent concealment of the true nature and
9  content of the DuraBlend® upholstery.  Plaintiffs and the other members of the
10 Class could not reasonably have discovered the true nature and content of the
11 DuraBlend® upholstery until it began peeling, as described herein.

12 19.   Defendants were under a continuing duty to disclose to Plaintiffs
13 and the other members of the Class the true nature and content of the Dura-
14 Blend® upholstery.  Rather than comply with this duty, Defendants knowingly,
15 affirmatively, and actively concealed the true nature and content of the
16 DuraBlend® upholstery.  Defendants marketed the DuraBlend® upholstery as a
17 "blended leather," which appeared to be leather to a reasonable consumer,
18 without providing disclosures of such conspicuousness and clarity as to be
19 noted by a reasonable consumer casually inspecting the products, or casually
20 reading or listening to Defendants' marketing materials, that the DuraBlend®
21 upholstery was in fact not leather or of the percentage of leather scraps or
22 fibers, if any, or the percentage of non-leather substances contained in it, as
23 required by federal law.

24 20.   Based on the foregoing, Defendants are estopped from relying on
25 any statutes of limitation in defense of this action.  Further, any and all statutes
26 of limitation otherwise applicable have been tolled by operation of the
27 discovery rule with respect to all claims alleged herein on behalf of Plaintiffs
28 and the other members of the Class.

**COMPLAINT**

ARIAS SANGUINETTI STAHLE & TORRIJOS LLP

**ARIAS SANGUINETTI STAHLE & TORRIJOS LLP**

# FIRST CAUSE OF ACTION

## VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT

### [Civil Code §§ 1750, *et seq.*]

### (By Plaintiffs and the Class Against all Defendants)

21. Plaintiffs reallege and incorporate herein by reference, as though fully set forth herein, paragraphs 1 through 20, inclusive, of this complaint.

22. This cause of action is brought pursuant to the Consumers Legal Remedies Act (Civ. Code §§ 1750, *et seq.*) ("CLRA") because Defendants' actions and conduct described herein constitute transactions that have resulted in the sale or lease of goods to consumers.

23. Plaintiffs and the other members of the Class are consumers as defined by Civil Code section 1761(d).

24. The furniture with the DuraBlend® upholstery that Defendants sold to Plaintiffs and the other members of the Class ("Class Furniture") are "goods" as defined in Civil Code section 1761(a).

25. Defendants violated the CLRA in at least the following respects:

   a. In violation of Civil Code section 1770(a)(5), Defendants represented that the Class Furniture had characteristics, ingredients, uses, and benefits which it does not have;

   b. In violation of Civil Code section 1770(a)(7), Defendants represented that the Class Furniture was of a particular standard, quality, or grade, when in fact the Class Furniture was of lesser standard, quality, and grade;

   c. In violation of Civil Code section 1770(a)(9), Defendants advertised the Class Furniture with the intent not to sell it as advertised; and

   d. In violation of Civil Code section 1770(a)(16), Defendants represented that the Class Furniture had been supplied in accordance with a previous representation, when it had not.

///

**COMPLAINT**

ARIAS SANGUINETTI STAHLE & TORRIJOS LLP

26.     Defendants knew, or should have known, that the representations made in their marketing of the DuraBlend® upholstery were false and misleading.

27.     Plaintiffs and the other members of the Class have been harmed and continue to be threatened with harm as a direct and proximate result of Defendants' actions in violation of the CLRA.

28.     Plaintiffs, on behalf of themselves and the other members of the Class, seek an order from this Court under Civil Code section 1780(a)(2) enjoining Defendants from continuing to engage in the practices described in this complaint and a declaration that Defendants' conduct violates the CLRA. Without such an order, Plaintiffs and the other members of the Class will continue to be harmed and threatened with harm as a direct and proximate result of Defendants' action in violation of the CLRA.  Moreover, without such an order, Plaintiffs and the other members of the Class will have no assurance that furniture sold by Defendants with upholstery that appears to be leather, or is represented to be or contain leather, in fact is leather or contains leather. Nor will Plaintiffs and the other members of the Class have any assurance that a disclosure in compliance with applicable law of the ratio of leather to non-leather substances contained in such upholstery is being provided or that the upholstery is of such nature and quality as to hold up to normal wear and tear and not begin to peel or disintegrate within a short period of time.

29.     Plaintiffs are not presently seeking compensatory or exemplary damages, pursuant to Civil Code sections 1780 and 1782(b).  In accordance with Civil Code section 1782(a), however, Plaintiffs will be serving, or has served, Defendants with notice of Defendants' alleged violations of the CLRA via certified mail, return receipt requested.  If Defendants fail to provide appropriate relief to Plaintiff and the other members of the Class for its violations of the CLRA within 30 days of Plaintiffs' notification letter,

**COMPLAINT**

Plaintiffs will amend this complaint, pursuant to Civil Code section 1782(d), to seek compensatory and exemplary damages under Civil Code sections 1780 and 1782(b).

### SECOND CAUSE OF ACTION

### VIOLATION OF THE UNFAIR COMPETITION LAW

[Bus. & Prof. Code §§ 17200, *et seq.*]

**(By Plaintiffs and the Class Against all Defendants)**

30.   Plaintiffs reallege and incorporate herein by reference, as though fully set forth herein, paragraphs 1 through 29, inclusive, of this complaint.

31.   Defendants fall within the definition of "person" under Business & Professions Code section 17021.

32.   Plaintiffs have standing to pursue this cause of action, as Plaintiffs have suffered injury in fact and have lost money or property as a result of Defendants' actions as described herein.

33.   Defendants' marketing of the DuraBlend® upholstery as "blended leather" without providing disclosures of such conspicuousness and clarity as to be noted by a reasonable consumer casually inspecting the products, or casually reading or listening to Defendants' marketing materials, that the Dura-Blend® upholstery was in fact not leather or of the percentage of leather scraps or fibers, if any, or the percentage of non-leather substances contained in it, instead knowingly, affirmatively, and actively concealing its true nature and content from Plaintiffs and the other members of the Class, constitutes unlawful, unfair, and/or fraudulent business practices in violation of Business and Professions Code sections 17200, *et seq.*

34.   Defendants' business practices, as alleged herein, violate the "unfair" prong of Business & Professions Code sections 17200, *et seq.* because: (i) the injury to Plaintiffs and the other members of the Class was substantial in that Defendants' concealment of the true nature and content of

**COMPLAINT**

ARIAS SANGUINETTI STAHLE & TORRIJOS LLP

the DuraBlend® upholstery caused Plaintiffs and the other members of the Class to purchase furniture that failed to be of such nature and quality as to hold up to normal wear and tear and not begin to peel or disintegrate within a short period of time; (ii) the gravity of the injury that Defendants' concealment of the true nature and content of the DuraBlend® upholstery imposed on Plaintiffs and the other members of the Class significantly outweighed the utility of the concealment; and (iii) the injury suffered by Plaintiffs and the other members of the Class as a result of Defendants' concealment of the true nature and content of the DuraBlend® upholstery is not one that Plaintiffs and the other members of the Class could reasonably have avoided.

35.  Defendants' business practices, as alleged herein, violate the "unlawful" prong of Business & Professions Code sections 17200, *et seq*. because they violate federal law, including section 24.2 of Title 16 of the Code of Federal Regulations (16 C.F.R. § 24.2), which provides as follows in pertinent part:

**§ 24.2 Deception as to composition.**

It is unfair or deceptive to misrepresent, directly or by implication, the composition of any industry product or part thereof. It is unfair or deceptive to use the unqualified term "leather" or other unqualified terms suggestive of leather to describe industry products unless the industry product so described is composed in all substantial parts of leather.
. . .

(f)  Ground, pulverized, shredded, reconstituted, or bonded leather. A material in an industry product that contains ground, pulverized, shredded, reconstituted, or bonded leather and thus is not wholly the hide of an animal should not be represented, directly or by implication, as being leather.    This provision does not preclude an accurate representation as to the ground, pulverized, shredded, reconstituted, or bonded leather content of the material. However, if the material appears to be leather, it should be accompanied by either:

Page 14

**COMPLAINT**

ARIAS SANGUINETTI STAHLE & TORRIJOS LLP

(1) An adequate disclosure as described by paragraph (a) of this section; or

(2) If the terms "ground leather," "pulverized leather," "shredded leather," "reconstituted leather," or "bonded leather" are used, a disclosure of the percentage of leather fibers and the percentage of non-leather substances contained in the material. For example: An industry product made of a composition material consisting of 60% shredded leather fibers may be described as: Bonded Leather Containing 60% Leather Fibers and 40% Non-leather Substances.

(g) Form of disclosures under this section. All disclosures described in this section should appear in the form of a stamping on the product, or on a tag, label, or card attached to the product, and should be affixed so as to remain on or attached to the product until received by the consumer purchaser. All such disclosures should also appear in all advertising of such products irrespective of the media used whenever statements, representations, or depictions appear in such advertising which, absent such disclosures, serve to create a false impression that the products, or parts thereof, are of a certain kind of composition. The disclosures affixed to products and made in advertising should be of such conspicuousness and clarity as to be noted by purchasers and prospective purchasers casually inspecting the products or casually reading, or listening to, such advertising. A disclosure necessitated by a particular representation should be in close conjunction with the representation.

36.   Defendants' business practices, as alleged herein, violate the "fraudulent" prong of Business & Professions Code section 17200, *et seq.* because they are likely to deceive a reasonable consumer.

37.   Accordingly, Defendants violated, and continues to violate, the proscription under Business & Professions Code section 17200 against engaging in unlawful, unfair, and fraudulent business acts and practices.

///

**COMPLAINT**

38.   As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent business practices, Plaintiffs and the other members of the Class have suffered injury in fact and lost money or property, in that they overpaid for the Class Furniture and purchased Class Furniture that they otherwise would not have purchased.

39.   Pursuant to Business and Professions Code section 17203, Plaintiffs and the other members of the Class seek an order of this Court enjoining Defendants from continuing to engage in unlawful, unfair, or deceptive business practices and any other act prohibited by law, including those acts alleged in this complaint.

40.   Plaintiffs and the other members of the Class also seek an order requiring Defendants to make full restitution of all monies they wrongfully obtained from Plaintiffs and the other members of the Class.

### THIRD CAUSE OF ACTION
### VIOLATION OF THE FALSE ADVERTISING LAW
**[BUS. & PROF. CODE §§ 17500, *et seq.*]**
**(By Plaintiffs and the Class Against all Defendants)**

41.   Plaintiffs reallege and incorporate herein by reference, as though fully set forth herein, paragraphs 1 through 40, inclusive, of this complaint.

42.   Business & Professions Code section 17500 provides that, "It is unlawful for any … corporation … with intent directly or indirectly to dispose of real or personal property … to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, … or in any other manner or means whatever, including over the Internet, any statement … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

Page 16

ARIAS SANGUINETTI STAHLE & TORRIJOS LLP

**ARIAS SANGUINETTI STAHLE & TORRIJOS LLP**

43.    Defendants directly disseminated or caused to be disseminated statements in California in advertisements, marketing materials, and other publications, including on Defendants' website, suggesting that the Class Furniture had upholstery that was composed of "leather" and was "durable" while failing to disclose the true nature and content of the DuraBlend® upholstery, which statements were (1) untrue and/or misleading, (2) known, or with the exercise of reasonable care should have been known, to Defendants to be untrue and/or misleading to consumers, including Plaintiffs and the other members of the Class, and (3) material and likely to deceive a reasonable consumer, including Plaintiffs and the other members of the Class.

44.    Plaintiffs and the other members of the Class have suffered injury in fact, including the loss of money and/or property, as a result of Defendants' untrue and/or misleading statements regarding the Class Furniture, which statements constitute unfair, deceptive, untrue, and/or misleading advertising in violation of the False Advertising Law (Bus. & Prof. Code, §§ 17500, *et seq.*).

45.    Plaintiffs and the other members of the Class would not have purchased the Class Furniture had they known of the deceptive nature of Defendants' untrue and/or misleading statements, or they would have paid less for the Class Furniture.

46.    The wrongful conduct alleged herein occurred, and on information and belief continues to occur, in the conduct of Defendants' business as part of a pattern or generalized course of conduct that is still perpetuated and repeated.

47.    Plaintiffs and the other members of the Class request that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and the other members of the Class any money Defendants

**COMPLAINT**

1  acquired by unfair competition, including restitution and/or restitutionary
2  disgorgement, and for such other relief set forth herein.

### FOURTH CAUSE OF ACTION
### FRAUD BY CONCEALMENT
**(By Plaintiffs and the Class Against all Defendants)**

48.   Plaintiffs reallege and incorporate herein by reference, as though fully set forth herein, paragraphs 1 through 47, inclusive, of this complaint.

49.   Defendants knew at all material times the true nature and content of the DuraBlend® upholstery in the Class Furniture and that it was neither "leather" nor "durable" and that it failed to be of such nature and quality as to hold up to normal wear and tear and not begin to peel or disintegrate within a short period of time after purchase.

50.   These facts were not known or reasonably known to Plaintiffs and the other members of the Class.

51.   Defendants knowingly, affirmatively, and actively concealed these facts from Plaintiffs and the other members of the Class, which facts were material to Plaintiffs and the other members of the Class because they concerned the quality, durability, and value of the Class Furniture.

52.   Defendants had a duty to disclose the above known material facts because Defendants knew that these material facts were unknown to Plaintiffs and the other members of the Class, because Defendants was in a superior position of knowledge with regard to the Class Furniture and the true nature and content of the DuraBlend® upholstery, and because Defendants chose to make certain representations (including suggesting that the upholstery was indeed composed of "leather" and was "durable") that presented only a part of the true story and misled Plaintiffs and the other members of the Class about the Class Furniture.

///

**COMPLAINT**

ARIAS SANGUINETTI STAHLE & TORRIJOS LLP

1
2
3
4
5

53.    Plaintiffs and the other members of the Class reasonably relied upon the completeness and veracity of Defendants' representations and would not have purchased the Class Furniture had they known of the concealed material facts, which material facts Defendants concealed with the intent to defraud Plaintiffs and the other members of the Class.

6
7

54.    Defendants' concealment of the above facts has caused damage to Plaintiffs and the other members of the Class in an amount to be shown at trial.

8
9
10
11
12
13

55.    Defendants acted maliciously, wantonly, oppressively, deliberately, and with the intent to defraud Plaintiffs and the other members of the Class.  Defendants acted with reckless disregard of the rights of Plaintiffs and the other members of the Class.  Therefore, Defendants' conduct rises to a level that warrants the award of punitive damages in an amount sufficient to deter such conduct in the future.

14

### FIFTH CAUSE OF ACTION

15

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

16

### [COM. CODE § 2314]

17

### (By Plaintiffs and the Class Against all Defendants)

18
19

56.    Plaintiffs reallege and incorporate herein by reference, as though fully set forth herein, paragraphs 1 through 55, inclusive, of this complaint.

20
21

57.    Defendants are, and at all relevant times were, a "merchant" within the meaning of Commercial Code section 2104(1).

22
23
24

58.    A warranty that the Class Furniture was in merchantable condition was implied by law in the transactions between Defendants and Plaintiffs and the other members of the Class, pursuant to Commercial Code section 2314.

25

///

26

///

27

///

28

ARIAS SANGUINETTI STAHLE & TORRIJOS LLP

Page 19

**COMPLAINT**

59.   At the time of sale and all times thereafter the Class Furniture were not in merchantable condition and are not fit for the ordinary purpose for which upholstered furniture is used.

60.   Plaintiffs and the other members of the Class have had sufficient direct dealings with Defendants and/or its agents to establish privity of contract between Defendants and Plaintiffs and the other members of the Class. Notwithstanding this privity, privity is not required in this case because Plaintiffs and the other members of the Class are intended third-party beneficiaries of contracts between Defendants and its reselling agents, such as the retail store Casa Linda Furniture from which Plaintiff Razo bought Furniture I and the retail store Design Center from which Plaintiff Koehn bought Furniture II; specifically, they are the intended beneficiaries of Defendants' implied warranties. Such agents were not the intended ultimate consumers of the Class Furniture and have no rights under the warranty agreements provided with the Class Furniture; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

61.   As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the members of the Class have been damaged in an amount to be proven at trial and are entitled to damages and other appropriate relief.

## SIXTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### [CIV. CODE §§ 1790, *et seq.*]
### (By Plaintiffs and the Class Against all Defendants)

62.   Plaintiffs reallege and incorporate herein by reference, as though fully set forth herein, paragraphs 1 through 61, inclusive, of this complaint.

63.   Plaintiffs and the other members of the Class who purchased the Class Furniture are "buyers" within the meaning of Civil Code section 1791(b).

ARIAS SANGUINETTI STAHLE & TORRIJOS LLP

**ARIAS SANGUINETTI STAHLE & TORRIJOS LLP**

64.   Plaintiffs and the other members of the Class have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

65.   Defendants are the "manufacturer" of the Class Furniture within the meaning of Civil Code section 1791(j).

66.   Defendants impliedly warranted to Plaintiffs and the other members of the Class that the Class Furniture was "merchantable" within the meaning of Civil Code sections 1791.1(a) and 1792.

67.   Section 1791.1(a) of the California Civil Code provides that, "implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

a.   Pass without objection in the trade under the contract description;

b.   Are fit for the ordinary purposes for which such goods are used;

c.   Are adequately contained, packaged, and labeled; and

d.   Conform to the promises or affirmations of fact made on the container or label.

68.   The Class Furniture would not pass without objection in the furniture trade because the DuraBlend® upholstery was neither "leather" nor "durable" and failed to be of such nature and quality as to hold up to normal wear and tear and not begin to peel or disintegrate within a short period of time after purchase.

69.   The Class Furniture was not fit for the ordinary purposes for which it is used because the DuraBlend® upholstery was neither "leather" nor "durable" and failed to be of such nature and quality as to hold up to normal

**COMPLAINT**

wear and tear and not begin to peel or disintegrate within a short period of time after purchase.

70.     The Class Furniture was not adequately labeled because Defendants failed, in violation of 16 C.F.R. § 24.2(f)(2) and (g), to disclose on the Class Furniture itself (1) that the DuraBlend® upholstery was in fact not leather, and (2) the percentage of leather fibers or the percentage of non-leather substances contained in it.

71.     Defendants breached the implied warranty of merchantability because the Class Furniture, which Defendants sold and marketed, would not pass without objection in the furniture trade, was not fit for the ordinary purposes for which such goods are used, and was not adequately labeled, as described herein, and therefore was inherently defective upon being placed in the stream of commerce by Defendants.

72.     As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and the other members of the Class received goods whose condition substantially impairs their value to Plaintiffs and the other members of the Class.  Plaintiffs and the other members of the Class have been damaged as a result of the diminished value of the Class Furniture, the malfunctioning of the Class Furniture, the nonuse of the Class Furniture, and the increased maintenance, repair, and maintenance costs of the Class Furniture.

73.     Pursuant to Civil Code sections 1791.1(d) and 1794, Plaintiffs and the other members of the Class are entitled to damages and other legal and equitable relief including, at their own election, the purchase price of their Class Furniture, or the overpayment or diminution in value of their Class Furniture.

///

///

**COMPLAINT**

**ARIAS SANGUINETTI STAHLE & TORRIJOS LLP**

## PRAYER

**WHEREFORE**, Plaintiffs pray for judgment as follows:

1. **On the First Cause of Action:**
   a. For injunctive relief.

2. **On the Second Cause of Action:**
   a. For restitution; and
   b. For injunctive relief.

3. **On the Third Cause of Action:**
   a. For restitution; and
   b. For injunctive relief.

4. **On the Fourth Cause of Action:**
   a. For compensatory damages; and
   b. For punitive damages.

5. **On the Fifth Cause of Action:**
   a. For compensatory damages;
   b. For restitution; and
   c. For injunctive relief.

6. **On the Sixth Cause of Action:**
   a. For compensatory damages;
   b. For restitution; and
   c. For injunctive relief.

///
///
///

**COMPLAINT**

7. **On All Causes of Action**:

    a.    For prejudgment interest;

    b.    For reasonable attorney's fees, costs, and expenses; and

    c.    For such other and further relief as this Court deems just and proper.

Dated: April 27, 2016         **ARIAS SANGUINETTI STAHLE & TORRIJOS LLP**

                      By: */s/ Mikael H. Stahle*
                        MIKE ARIAS
                        MIKAEL H. STAHLE

                        Attorneys for Plaintiffs

**COMPLAINT**

1

## <u>DEMAND FOR JURY TRIAL</u>

2        Plaintiffs hereby demand a trial by jury on all claims so triable.

3

4    Dated: April 27, 2016          **ARIAS SANGUINETTI STAHLE**

5                                   **& TORRIJOS LLP**

6

7                                   By: */s/ Mikael H. Stahle*

                                    MIKE ARIAS
8                                   MIKAEL H. STAHLE

9                                   Attorneys for Plaintiffs

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Page 25

**COMPLAINT**

ARIAS SANGUINETTI STAHLE & TORRIJOS LLP

EXHIBIT "A"





EXHIBIT "B"





